**Donald HERRICK et al.**

v.

**Thomas THEBERGE et al.**

Supreme Judicial Court of Maine.

Argued March 9, 1984.

Decided April 11, 1984.

Berman, Simmons & Goldberg, P.A., Paul F. Macri (orally), William D. Robitzek, Lewiston, for plaintiffs.

Richardson, Tyler & Troubh, Jeffrey A. Thaler (orally), John S. Whitman, Portland, for defendants.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, WATHEN, and GLASSMAN, JJ., and DUFRESNE, A.R.J.

McKUSICK, Chief Justice.

On defendants' motion to dissolve a $100,000 ex parte attachment on their real estate, the Superior Court (Androscoggin County) upheld the attachment, but reduced its amount to $50,000. On appeal, defendants contend that the affidavits filed in support of plaintiffs' motion for the attachment bore legally inadequate jurats and were factually insufficient to justify the court's granting the motion. We do not agree.

## I.

Plaintiffs Donald and Sylvia Herrick occupy an apartment in a building owned by defendants, Thomas and Michael Theberge. On July 26, 1982, plaintiffs brought a suit against their landlords seeking to recover damages arising out of an incident in which Mrs. Herrick allegedly fell on the front

steps of the apartment building. Mrs. Herrick asked for damages for physical injury, pain and suffering, medical expenses, lost wages, and lost earning capacity. Mr. Herrick sued for loss of consortium. During October and November, 1982, plaintiffs and defendants were all deposed.

On June 10, 1983, plaintiffs filed a motion for ex parte approval of attachment and trustee process. Accompanying the motion was a certificate from plaintiffs' attorney certifying that defendants held an insurance policy with a $100,000 limit that would be available to satisfy a judgment in the underlying action. The motion for attachment was supported by three affidavits, two from plaintiffs' attorney and one from Dr. C. Craig Heindel, Mrs. Herrick's physician.

After an ex parte hearing held on June 10, 1983, a Superior Court justice approved an attachment and trustee process in an amount not to exceed $100,000. Three days later, plaintiffs' counsel caused an attachment in that amount to be placed on all of defendants' real estate in Androscoggin County. Apparently no trustee process was ever served.

On August 24, 1983, defendants filed a motion for dissolution of that ex parte real estate attachment, accompanied by an affidavit of their attorney. On September 15, 1983, a hearing was held on the dissolution motion before another Superior Court justice, who also received from the parties extensive memoranda arguing the facts and applicable law. The dissolution motion justice denied the motion, but, treating it as a motion for modification, he reduced the attachment to $50,000. Defendants filed a timely appeal from that order.

On appeal defendants argue that, on the basis of the evidentiary material before him, the dissolution motion justice erred in denying their motion to dissolve. In addition to the four affidavits, the material presented to the justice by the parties consisted of plaintiffs' answers to interrogatories and the depositions of both plaintiffs and both defendants.

## II.

At the outset we must dispose of defendants' argument that plaintiffs' three affidavits contained fatally defective jurats. Both the rule for attachments after notice, M.R.Civ.P. 4A(c), and the rule for ex parte attachments, M.R.Civ.P. 4A(f), require that supporting affidavits comply with M.R. Civ.P. 4A(h). *See also* M.R.Civ.P. 4B(b) and (h) (trustee process). Rule 4A(h) provides in full as follows:

> Affidavits required by this rule shall set forth specific facts sufficient to warrant the required findings and shall be upon the affiant's own knowledge, information or belief; and, so far as upon information and belief, shall state that he believes this information to be true.

The first affidavit from plaintiffs' counsel carries the following jurat:

> Personally appeared the above-named [plaintiffs' attorney] and made oath that the above stated facts are true based upon his knowledge, information and belief to the extent that they are based upon information and belief he swears that he believes them to be true.

That jurat tracks the language of Rule 4A(h) except for the omission of the word "and" after the first use of the word "belief." The addition of the word "and," so that the jurat reads: "based upon his knowledge, information and belief and, to the extent that ...," brings the jurat into conformity with the requirements of Rule 4A(h). Such an obvious clerical omission does not affect the certainty that the affiant correctly understood his duty of truthfulness.

■ Both the second affidavit by plaintiffs' counsel and that of Dr. Heindel contain the following jurat:

> Personally appeared the above named, [plaintiffs' attorney] [Dr. Heindel], who stated under oath that the facts above are true, except when stated on information and belief, and when so stated, they are believed to be true.

Those jurats substitute the words "that the facts above are true" for the language of Rule 4A(h), namely, that the affidavit is made "upon the affiant's own knowledge." The wording of those jurats sufficiently reflects the affiants' awareness of the difference between facts personally known to them as true and facts that they believe are true based upon information and belief. The contents of the body of an affidavit are relevant to an assessment of a claimed deficiency in the jurat. *See Ingalls v. Brown,* 460 A.2d 1379, 1381 (Me.1983); *Mechanics' Savings Bank v. Bridges,* 450 A.2d 904, 904 (Me.1982). The attorney's affidavit contains no information stemming from his personal knowledge. On its face, that affidavit conveys information the attorney acquired through depositions, discussions with clients, and research in government statistics. Dr. Heindel's affidavit summarily states a medical conclusion based upon his observations of his patient, Mrs. Herrick. He clearly states his professional belief based upon his personal knowledge of the facts from which it was drawn.

 These jurats, though sloppily prepared, do not render the affidavits fatally defective. Our rejection of defendants' arguments on the jurat issue should not obscure, however, the importance of unquestionable compliance with the requirements of Rule 4A(h). *See Bowman v. Dussault,* 425 A.2d 1325, 1328 (Me.1981). Failure to adhere strictly to the rule's terms tends to undermine the integrity of the affidavit process and needlessly engenders appellate litigation. Any problem is readily avoided by fashioning a jurat that tracks the exact language of Rule 4A(h).

### III.

 Defendants next argue that, based upon the interrogatories, depositions, and affidavits, the dissolution motion justice should have granted their motion to dissolve the attachment order. In denying defendants' motion, the dissolution justice was required to find

that there is a reasonable likelihood that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the amount of the attachment over and above the aggregate of any liability insurance, bond, or other security, and any property or credits attached by other writ of attachment or by trustee process shown by the defendant to be available to satisfy the judgment.

M.R.Civ.P. 4A(c). To satisfy the reasonable likelihood requirement, plaintiffs need only have had a "mere probability of success or a favorable chance of success." *Northeast Investment Co., Inc. v. Leisure Living Communities, Inc.,* 351 A.2d 845, 851–52 (Me.1976). The attachment may be approved so long as plaintiffs' claim is not of "such insubstantial character that its invalidity so clearly appears as to foreclose a reasonable possibility of recovery ...." *Id.* at 852. The limited showing required of plaintiffs, combined with the "clear abuse of discretion" standard of review, necessitates reversal of a Superior Court order granting an attachment only in the relatively rare cases where the record before the Superior Court shows the plaintiffs to have had virtually no chance of recovery on their claim. Considering the facts of this case under this deferential standard, we find no error committed by the Superior Court as to any element of plaintiffs' claim.

 The dissolution motion justice had before him sworn evidence that justified him in concluding that plaintiffs had a reasonable likelihood of establishing defendants' liability for Mrs. Herrick's fall on the icy front steps of their apartment house. That material tended to show negligence on the part of defendants through their failure to maintain the steps free from ice and to provide a proper railing, as well as through the remedial efforts undertaken by them after the accident. *See* M.R.Evid. 407(a) (evidence of remedial measures admissible to show negligence). Mrs. Herrick's comparative fault is an affirmative

defense, and her freedom from such fault is not an element in plaintiffs' initial showing of a reasonable likelihood of success. *See Ingalls*, 460 A.2d at 1381–82. The affidavit made by defendants' attorney in support of the motion for dissolution did not raise this affirmative defense. Furthermore, Mrs. Herrick's comparative fault, if any, would bar her recovery only if her fault was found at least to equal that of defendants. *See* 14 M.R.S.A. § 156 (1980).

■ When the dissolution motion justice reduced the attachment to $50,000, he necessarily concluded that there was a reasonable likelihood that plaintiffs would recover judgment for at least $150,000; that is, $50,000 more than defendants' insurance coverage. *See* M.R.Civ.P. 4A(c). The affidavits would support a finding that Mrs. Herrick has suffered permanent neurological damage, has experienced considerable pain and suffering, and has lost a job paying approximately $6,000 per year. The dissolution motion justice did conclude that the reasonably likely judgment was at least $150,000, rather than at least $200,000 as found earlier by his colleague on the original ex parte motion for attachment. We are in no position to second-guess the case assessment that the second justice made after the full hearing he gave the parties. Certainly, he committed neither clear error nor abuse of discretion in determining that plaintiffs were then entitled to an attachment in the amount of $50,000.

## IV.

■ Defendants finally contend that the dissolution motion justice was required to determine whether on June 10, 1983, when the first justice approved the ex parte attachment, there existed circumstances sufficient to justify his approving the attachment without giving defendants notice and opportunity to be heard. They argue that their motion to dissolve must be granted if, on a *de novo* reexamination of that question, the justice hearing the motion to dissolve concludes that the first justice was wrong in finding that a factual basis existed on June 10, 1983, for approving the attachment ex parte. The first justice's finding, tracking the requirement of M.R. Civ.P. 4A(f),[1] was "that there is a clear danger that the defendant[s] if notified in advance of attachment of the property will make it unavailable to satisfy a judgment." The dissolution motion justice made no express finding on that "ex parte need" issue, but "it must be assumed that he found for the plaintiffs upon all issues of fact necessarily involved in his ultimate decision which was favorable to them." *Harmon v. Emerson*, 425 A.2d 978, 981 (Me.1981) (quoting *Jacobs v. Boomer*, 267 A.2d 376, 379 (Me.1970)). Defendants attack, as clear error and an abuse of discretion, both the first justice's express finding of ex parte need and any similar finding that is implicit in the second justice's denial of their motion to dissolve.

■ We find no reversible error in such a finding. Both justices had before them the affidavit of plaintiffs' attorney, made contemporaneously with the ex parte attachment order, that he assumed that the anonymous advertisement of one piece of defendants' real estate might "constitute an anticipation of the total breakdown of settlement negotiations and an attempt to liquidate part of their real estate holdings prior to an attachment." The accuracy of

---

1. M.R.Civ.P. 4A(f) provides that an ex parte attachment order shall issue if, first, the court makes the same finding as to the reasonable likelihood of a plaintiff's judgment that is required under M.R.Civ.P. 4A(c) for attachment orders after notice and hearing, and, second, the court finds

 that either (i) there is a clear danger that the defendant if notified in advance of attachment of the property will remove it from the state or will conceal it or will otherwise make it unavailable to satisfy a judgment, or (ii) there is immediate danger that the defendant will damage or destroy the property to be attached.

 The quoted alternatives represent the "ex parte need" finding required before issuance of an attachment order without notice to the defendants.

that assumption has never been contradicted by defendants under oath. Given the size of plaintiffs' damage claims and the attempted sale of one house by defendants, the Superior Court justices were justified in concluding that defendants, if notified of an impending attachment, might well sell some of their property and make it unavailable to satisfy a judgment.

In any event, the "ex parte need" question did not remain a viable issue once the dissolution motion justice determined, after full notice and hearing, with the burden of proof resting on plaintiffs,[2] that they were entitled to a real estate attachment of $50,000. At that point, to dissolve the existing attachment because of error in the "ex parte need" finding would serve the purposes of neither the court nor the parties. On the basis of the "reasonable likelihood" finding alone, plaintiffs became entitled to an automatic grant of a new motion for a $50,000 attachment. To send plaintiffs out the courthouse door to come right back in again with a new motion would merely add to the court's work. While an intervening lienor might be moved into first place by dissolution of the earlier attachment and substitution of a new and later attachment, such hypothetical third party interest in absence of its assertion is no reason for the court to waste scarce judicial resources in adjudicating a proposition that is moot as between the parties. Plaintiffs have established their right to a $50,000 attachment on defendants' real estate. In the circumstances of this case, no conceivable purpose is served by returning to the situation prevailing on June 10, 1983, for the dissolution motion justice to determine anew, and for the Law Court to review, whether a satisfactory reason then existed for the first justice to proceed ex parte.

It may be argued, however, that the otherwise footless exercise of reviewing the "ex parte need" finding on every motion to dissolve an ex parte attachment would serve as a standing deterrent to overreaching by attaching plaintiffs. This argument is quickly answered. Such deterrence, even if it did result from the required redetermination of the ex parte need question, would be bought at a heavy price of extra demands on the courts. In any event, that deterrence is unnecessary in light of already existing protections against abuse of the ex parte attachment process. Rule 4A makes the trial judges the basic protectors against overreaching by attaching plaintiffs. We are unwilling to accept the notion that the required finding of ex parte need is blindly and routinely made by trial judges issuing ex parte attachment orders without sufficient affidavit support. Furthermore, M.R.Civ.P. 4A(f) explicitly warns any plaintiff's attorney that in filing a motion for ex parte attachment he is subject to the obligations of Rule 11; by the signature that is required on his motion, the attorney certifies that "to the best of his knowledge, information, and belief there is good ground to support" the motion. *See* M.R.Civ.P. 11. Breach of that obligation can be met by "an appropriate sanction" that may be imposed on either the attorney or his client or both. *Id.* In addition, the attorney is always subject to the disciplinary constraints of the Maine Bar Rules. *See, e.g.,* M.Bar R. 3.7(a), (e)(1)(i). We do not need to pile a *per se* prophylactic rule on top of the protections and deterrents that already exist.

## V.

In sum, defendants have had the benefit of notice and a full hearing on the question

---

**2.** Under the second sentence of M.R.Civ.P. 4A(g), the plaintiff at the hearing on a dissolution motion has "the burden of justifying any finding in the ex parte order that the moving party has challenged by affidavit." Thus, a defendant has the power to turn the dissolution hearing into the full equivalent of a hearing on a motion under M.R.Civ.P. 4A(c) for approval of attachment with notice and opportunity to be heard. The second sentence of Rule 4A(g) does not, however, mean that a defendant may insist upon litigating on the dissolution motion a finding of the ex parte order that has been effectively mooted. That sentence only allocates burden of proof and does not resolve what issues are viable on the dissolution motion.

of plaintiffs' attachment of defendants' real estate in this lawsuit. At that hearing, the burden of proof rested on plaintiffs on every factual issue that defendants wished to put in dispute. On appeal, defendants have failed to show any reversible error in either the jurats of plaintiffs' affidavits or in the adequacy of plaintiffs' proof to support the Superior Court's finding of their reasonable likelihood of success. Thus, defendants fail in their appellate attempt to show that the Superior Court erred in finding plaintiffs to have a right to a $50,000 attachment. Since plaintiffs are in any event now entitled to that attachment, defendants suffer under no continuing aggrievement from the error, if any, in the Superior Court's originally approving the attachment ex parte.

The entry is:

Judgment affirmed.

All concurring.