STATE OF MAINE
CUMBERLAND, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-CV-12-28
BCD-CV-12-51

JCD-CUM- 9/28/2012

|  |  |  |
|---|---|---|
| JAMES C. EBBERT, Court-appointed Receiver for Associated Grocers of Maine, Inc., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| JOSEPH SLEEPER & SONS, INC., et al. | ) ) | |
| Defendants | ) ) ) | |
| —————————————————— | ) ) ) | **ORDER** (Motion for Attachment) |
| JAMES C. EBBERT, Court-appointed Receiver for Associated Grocers of Maine, Inc., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | |
| JOE'S COUNTRY STORE, INC. and JOSEPH P. KELLY, | ) ) ) | |
| Defendants | ) ) | |

Plaintiff James C. Ebbert, the court-appointed Receiver for the Associated Grocers of Maine, Inc. (AGME),[1] moves, pursuant to M.R. Civ. P. 4A and 4B, for attachment and attachment on trustee process of the real and personal property of Defendants Joseph P. Kelly

---

[1] Ebbert was appointed receiver of AGME by consent, *see Savings Bank of Me. v. Assoc. Grocers of Me., Inc.*, KENSC-CV-11-92 (Me. Super. Ct., Ken. Cty., Apr. 27, 2011), prior to that case's transfer to the Business and Consumer Court on October 5, 2011, *see Savings Bank of Me. v. Assoc. Grocers of Me., Inc.*, BCD-CV-11-36 (Me. Super. Ct., Cum. Cty., Oct. 5, 2011).

and Joe's Country Store, Inc. (JCS), jointly and severally, in the amount of $3,853, plus all allowable pre- and post-judgment interest and other recoverable costs and expenses.

Plaintiff filed this motion along with the complaint in this matter, in which complaint Plaintiff asserts four causes of action against JCS: 1) breach of contract for failure to pay amounts due on account (Count I); 2) action on account annexed, pursuant to 16 M.R.S. § 355 (2011) (Count II); 3) unjust enrichment (Count III); and 4) quantum meruit (Count IV). Plaintiff also asserts a claim against Kelly personally for breach of guarantee (Count V). In each count, Plaintiff seeks payment of $3,853, the balance of the JCS's customer account with AGME. (Ebbert Aff. Exh. E.) Plaintiff's attachment motion is supported by the affidavit of the Receiver and accompanying affidavits through which the Receiver asserts that it is more likely than not that the Receiver will prevail on one of his theories of recovery against Defendants in the amount of the account balance. Defendants filed a motion to dismiss in which they assert the defense of recoupment.

AGME distributed and delivered produce, groceries, and related items to independent retailers throughout northern New England. (Ebbert Aff. ¶ 3.) JCS, like other members, entered into an agreement with AGME whereby AGME extended credit terms to JCS for the purchase and delivery of products, and JCS became a member of AGME. (Ebbert Aff. ¶ 7; Ebbert Aff. Exh. B.) Pursuant to the agreement, JCS also purchased 3 shares of stock: one share of Class A voting common stock due and payable at the time the agreement was executed, with a stated value of $2,527; and two shares of Class B preferred stock, due and payable through a minimum 1% invoice surcharge, with a stated value of $2,500 per share. (Ebbert Aff. ¶ 9.) Also pursuant to the agreement and the by-laws of AGME, JCS made payments via the 1% invoice surcharge

2

to fund a capital account. (Ebbert Aff. ¶ 10.) The balance of JCS's capital account on April 27, 2011, was $1,743. (Ebbert Aff. ¶ 10.)

AGME supplied JCS with products, which JCS accepted, and for which AGME billed JCS. (Ebbert Aff. ¶¶ 18-20.) Kelly executed a personal guarantee for the obligations of JCS. (Ebbert Aff. ¶ 22.) Despite demand, both JCS and Mr. Kelly have failed to pay AGME the amounts due on the account: $3,853. (Ebbert Aff. ¶¶ 21, 27.)

The primary issues in this case, and in all of the similar cases filed by the Receiver against former AGME members, are the nature of the relationship between AGME and its members, and whether the amount owed can be reduced by the value of the members' capital accounts.[2] Defendants maintain that under the doctrine of recoupment, Defendants should receive a credit in the amount of the value of their account, which credit would reduce the amount Defendants might be obligated to pay to Plaintiff for products received.

The Receiver first asserts that the amounts owed on the account cannot be set off or subject to recoupment because JCS's interest in the capital account and stock is equitable in nature. The Receiver argues that equity cannot be set off by debt because there is no mutuality in the quality of right. Second, the Receiver argues that the capital account is equivalent to retained funds in a cooperative association, which can only be distributed at the discretion of the board or upon the member's exit from the association. Third, pursuant to AGME's agreement with JCS, AGME – not the members - has the exclusive right to set off the book balance of the capital account against the debt of a member. Finally, the Receiver argues that JCS agreed that the book balance of the capital account would be subordinate to amounts due to the Bank of Maine or other lending institutions, thus waiving any right to setoff or recoupment.

---

[2] AGME is insolvent and, therefore, the members' capital accounts are unfunded. The issue thus focuses on the value of the various accounts rather than the actual funds in the accounts.

Defendants characterize the capital accounts as security deposits for amounts due on a member's account, thus making AGME a secured creditor subject to Article 9 of the Uniform Commercial Code. According to Defendants, because the Receiver has possession of the collateral, 11 M.R.S. § 9-1207(3)(b) (2011) requires the Receiver to use the capital account balance to reduce the obligation, even after default by a member. Defendants argue that the debt and the capital account arise out of the same transaction: the contract granting JCS credit with AGME in exchange for pledging his stock and capital account as security for the obligation.[3]

Pursuant to M.R. Civ. P. 4A and 4B, the Court may approve an order of attachment or trustee process after notice to the defendant, a hearing, and

> upon a finding by the court that it is more likely than not that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the aggregate sum of the attachment and any liability insurance, bond, or other security, and any property or credits attached by other writ of attachment or by trustee process shown by the defendant to be available to satisfy the judgment.

M.R. Civ. P. 4A(c); *see* M.R. Civ. P. 4B(c) (containing nearly identical language regarding trustee process). The "more likely than not" standard is "greater than 50% chance of prevailing." *Richardson v. McConologue*, 672 A.2d 599, 600 (Me. 1996) (quotation marks omitted). An attachment motion or motion for trustee process must be supported by affidavits setting "forth specific facts sufficient to warrant the required finding and shall be made upon the affiant's own knowledge, information or belief." M.R. Civ. P. 4A(c), (i); *see* M.R. Civ. P. 4B(c) (requiring a motion for trustee process to be supported by affidavits meeting the requirements set forth in Rule 4A(i)). In determining whether to grant a motion to attach, the court "assesses the merits of

---

[3] Defendants raise additional objections to the attachment motion. Defendants argue that equitable estoppel prohibits the Receiver from asserting that the capital deposits are not security for the balance due on accounts receivable. Defendants also challenge the existence and applicability of the subordination agreement with the Bank of Maine. Finally, Defendants argue that the Receiver's recovery is barred by the doctrine of unclean hands.

4

the complaint and the weight and credibility of the supporting affidavits." *Porrazzo v. Karofsky*, 1998 ME 182, ¶ 7, 714 A.2d 826 (citing *Plourde v. Plourde,* 678 A.2d 1032, 1035 (Me. 1996)).

Based upon the affidavit of the Receiver, the exhibits filed with the attachment motion, and the arguments of counsel, the Court is satisfied that the Receiver will recover judgment against JCS and Kelly and, therefore, an attachment is warranted. Defendants have asserted the defense of recoupment. As explained by the Law Court, "[i]f the applicability of an affirmative defense is clear, then a court can consider the application of the defense in its determination whether the requirements of Rules 4A(c) and 4B(c) have been met." *Porrazzo,* 1998 ME 182, ¶ 7, 714 A.2d 826. The only "affidavit" filed by Defendants is ostensibly that of Mr. Kelly, but the affidavit filed is neither signed nor attested. Defendants have thus failed to submit any record evidence to support their defense of recoupment. *See Herrick v. Theberge*, 474 A.2d 870, 874-75 (Me. 1984) (denying a motion to dissolve an attachment because the non-moving party's assertion of the affirmative defense of comparative fault was not supported by the affidavits).

The Court is, therefore, prepared to authorize an attachment of Defendants' property in the amount of $3,853. However, the Court is not convinced that both an attachment and an attachment on trustee process are necessary to provide Plaintiff with sufficient security should Plaintiff ultimately prevail in this matter. The Court will limit the attachment to specific property, in accordance with M.R. Civ. P. 4A(d), if Defendants demonstrate that certain property available for attachment "would, if sold to satisfy any judgment obtained in the action, yield to the plaintiff an amount at least equal to" $3,853. If Defendant would like the Court to consider an attachment on specific property, on or before October 8, 2012, Defendants shall submit the request with reliable proof of value of the property that Defendants propose for attachment. Upon receipt of Defendants' request, the Court will decide whether an attachment limited to

5

specific property is appropriate. If Defendants do not submit the request, the Court will issue an order granting to Plaintiff an attachment and attachment on trustee process.

Pursuant to M.R. Civ. P. 79(a), the clerk shall incorporate this Order into the docket by reference.

Dated: 9/28/12

_____
Justice, Maine Business & Consumer Court

Entered on the Docket: 10.2.13
Copies sent via Mail ___ Electronically ___

6

BCD-CV-12-51

James C. Ebbert, Court-Appointed
Receiver for Associated Grocers of Maine, Inc.,
                                    Plaintiff

v.

Joe's Country Store., et al

                          Defendant(s)


Plaintiff's Attorney:

Fred Bopp, Esq
Perkins Thompson
One Canal Plaza
PO Box 426
Portland ME  04112

Defendant's Attorney

Joseph Goodman, Esq.
The Goodman Law Firm
537 Congress St
PO Box 7523
Portland ME  04112

BCD-CV-12-28

James C. Ebbert, Court-Appointed
Receiver for Associated Grocers of Maine, Inc.,
                                        Plaintiff

v.

Joseph Sleeper & Sons, Inc., et al
                                        Defendant(s)


Plaintiff's Attorney:

Fred Bopp, Esq
Perkins Thompson
One Canal Plaza
PO Box 426
Portland ME  04112

Defendant's Attorney

George Marcus, Esq.
Marcus Clegg & Mistretta
One Canal Plaza Ste 600
Portland ME  04101-4035