UNITED STATES of America, Plaintiff,

v.

**Thomas J. CAPRICE et al., Defendants.**

Civ. No. 988–69.

United States District Court,
D. New Jersey.

Aug. 31, 1976.
Opinion on Merits Nov. 22, 1976.

Jonathan L. Goldstein, U. S. Atty., by Carolyn E. Arch and James A. Plaisted, Asst. U. S. Attys., Newark, N. J., for plaintiff.

Frank P. Marano, East Orange, N. J., for defendants.

## MEMORANDUM

BIUNNO, District Judge.

The U.S. Court of Appeals for the Third Circuit has filed an opinion August 23, 1976, 541 F.2d 275, remanding the case (without deciding the appeal), "with directions to proceed forthwith" so that the parties and the court can address what the opinion designates as a "threshold question", expressed as follows:

"Whether, under federal law, there can be resort to a deficiency judgment proceeding where a foreclosure sale has been ordered by the district court and a writ of

execution has been returned unexecuted because the property was not sold when it was offered for sale?"

To assist the parties in preparing their submissions, but without in any way limiting their scope or depth, the following items are mentioned.

A. *History of Action.*

1. Complaint was filed August 15, 1969 and the suit was assigned to the late Judge Robert Shaw on August 18, 1969.

2. Judgment of foreclosure, etc., was filed March 29, 1971. Writ of execution was issued June 18, 1971 and report of sale was filed August 25, 1971. [Note: The writ itself was not returned and filed until September 20, 1972].

3. A motion for deficiency judgment (based on the absence of any bids) was filed November 18, 1971, returnable December 13, 1971.

4. At the hearing on the motion the following colloquies occurred:

(P. 2, ll. 5 to 10): "THE COURT: The property has never been sold, has it? MISS ARCH: There was a writ of execution issued to the United States Marshal and a foreclosure sale was held, but no bidders appeared at the sale. THE COURT: Nobody bid. MISS ARCH: And consequently there was no sale." (P. 3, ll. 8 to 20): "THE COURT: Why don't you try another sale? MISS ARCH: We could do that. THE COURT: I would assume that the property had some value. MISS ARCH: As you know, ordinarily the Veterans Administration or any Federal agencies normally bid in at foreclosure sales of property being foreclosed by them. In this case it was felt by the Veterans Administration that the property had little or no value to it, and consequently it did not bid in at the sale, and there were no third parties interested. THE COURT: You are more or less proceeding on the bond. MISS ARCH: Yes, sir. THE COURT: And the only matter at issue now, I would assume, is the amount of the loss? MISS ARCH: That is correct."

(Tr. p. 8, l. 24 to p. 8, l. 16): "THE COURT: Is there any reason why you can't proceed in this litigation on the bond obligation, on the bond? MISS ARCH: I'm not sure I understand. THE COURT: You have a mortgage and a bond. The bond states the amount of the obligation. Is there any reason you can't proceed with this litigation as a suit on the bond to recover a loss that the government has sustained? MISS ARCH: I thought that was what I was doing here today, but if you want to set a specific trial date for it—THE COURT: He indicates he has certain equitable defenses. I'm not impressed with the references so far, but I will resolve the doubt in favor of the defendants and direct that this be placed on my next non-jury calendar, and you can bring in whatever evidence you want. MISS ARCH: I take it you are denying my motion without prejudice. THE COURT: Your motion is denied without prejudice."

5. On October 5, 1972 following the death of Judge Shaw, the case was reassigned to Judge Leonard I. Garth.

6. On August 10, 1973, following Judge Garth's appointment to the Court of Appeals, the case was reassigned to Judge Biunno.

7. Trial was held November 14, 1974. After submission of briefs on both sides, the case was decided by opinion dated December 11, 1974.

B. *Nature and tenor of federal law.*

1. It has been said that "there is no Federal law of mortgages." See, *Southland, etc. v. Oil, etc.*, 248 F.Supp. 520 (D.C. La., 1965); *First Federal, etc. v. Zequeira*, 288 F.Supp. 384 (D.C.P.R., 1968).

2. The only statute dealing with mortgage foreclosures that the court has found is 28 U.S.C. 2410. This is evidently a statute waiving the sovereign immunity of the United States so as to permit enumerated kinds of suits to be brought against the United States when it claims a mortgage or other lien in the subject property (real or

personal). These include suits to quiet title, to foreclose a mortgage or other lien, to partition, to condemn or to interplead. It appears to apply only to cases involving mortgage liens held by the United States where the United States is a defendant, and not to cases where the United States is plaintiff seeking to foreclose a mortgage it holds.

3. No rule of court has been found dealing with federal foreclosures. So far as general rules of practice are concerned, the following may be applicable:

. . . Rule 1 (rules to be construed to secure the just, speedy and inexpensive determination of every action)
. . . Rule 2 (single form of "civil action")
. . . Rule 13 (cross-claims)
. . . Rule 14 (third-party complaint)
. . . Rule 18 (joinder of claims and remedies)
. . . Rule 54 (c) (judgment for relief entitled)

4. Jurisdiction of a United States district court to entertain a suit by the United States (a) to foreclose a mortgage and (b) on the bond secured by the mortgage, appears to be embraced by U.S. Const. Art. III, sec. 2, stating that:

"The judicial Power shall extend to all Cases, in Law and Equity, arising under . . . the Laws of the United States . . . [and] to Controversies to which the United States shall be a Party . . ."

5. Statutory jurisdiction of suits for mortgage foreclosures by the United States appears to arise from 28 U.S.C. 1345. The provisions of 28 U.S.C. 1444 appear to have no application to a suit like the present one.

6. Under federal law, may the United States sue on a bond (or a note) for the amount due on a federal loan and ignore any security (real, personal or mixed) which it holds to secure the loan?

7. Under federal law may the United States sue both for the foreclosure of a right to redeem pledged or mortgaged prop-erty (real, personal or mixed) and for a money judgment, in the same action?

8. Is strict foreclosure, calling on the mortgagor to pay the money obligation by some specified date or else have his equity of redemption foreclosed, thereby making the United States' title under its mortgage indefeasible, available as a remedy under federal law, without a judicial sale? If so, may the United States also have judgment for the amount unpaid on the loan or other money obligation, in the same or in a separate suit?

9. Under federal law is the United States obliged to join all its claims (i. e., for foreclosure and money judgment) in one suit, under the "single action" doctrine?

10. If a "fair value" allowance is available under federal law, does it apply in any circumstances other than (a) when there is a strict foreclosure or (b) when the United States is highest bidder at the foreclosure sale, so that in either case the United States, rather than a third party bidder, acquires the property given as security?

11. If a "fair value" allowance is available under federal law, what underlying facts must the mortgagor establish to warrant activation of the allowance before the mortgagee United States has received payment in full on the money obligation?

12. When the property pledged as security is worthless, or abandoned to the mortgagor, may a judgment in foreclosure be vacated or modified to eliminate the requirement for sale, leaving the United States to whatever it can recover from other assets of the mortgagor by way of execution of its money judgment?

C. *Briefs and Hearing.* The parties are directed to submit simultaneous briefs dealing with the above items on or before September 30, 1976, and the court will thereupon set a date for oral argument on the question remanded.

SO ORDERED.

### OPINION ON THE MERITS

After appeal taken in this case, the Court of Appeals remanded with direction to pro-

ceed so that the parties and the court could address a threshold question, namely, whether there can be resort to a deficiency judgment when the court has ordered a foreclosure sale and the writ was returned unexecuted because no one bid, and there was no sale.

Promptly after receipt of the opinion above, the court prepared, and distributed to counsel, a memorandum stating the question, outlining the history of the action, and suggesting a number of questions to be explored (without limiting the parties). The conclusions of the court follow.

■ By definition, there cannot be a "deficiency" judgment unless (1) the amount due on the obligation has been established; (2) property held as security for the obligation has been sold and some amount realized, and (3) a judgment is entered for the unsatisfied balance of the obligation, i. e., the "deficiency."

In this case, the proceeding was conducted as a combined proceeding for foreclosure of the mortgaged property by sale, and for what was due on the obligation.

The attempted foreclosure step was frustrated by the fact that no one bid at the sale. There was no sale, and no proceeds of sale. Title to the property remains in the record owner, subject to the lien of the mortgage, just as though there had been no foreclosure, except for the fact that the title records will reflect the filing of the foreclosure suit.

As noted below, it will be necessary to modify the final judgment to reflect a dismissal of the foreclosure aspect of the suit, leaving the record title as it was before, subject to the lien of the mortgage but without pendency of the foreclosure aspect.

At common law and in New Jersey (before statutes) a mortgage was a deed conveying title to the lender as security for the obligation. The conveyance was subject to the "defeasance clause", under which the title conveyed could be defeated by satisfaction of the obligation secured. In such cases (absent dispute) the fact was evi-

denced by a "satisfaction piece", or a release.

An unsatisfied lender/mortgagee had a choice of remedies. He could simply sue and secure judgment on the obligation (a note or bond). He could put the borrower out of possession by ejectment, grounded on the conveyance in the mortgage. He could bring an action in equity by way of strict foreclosure, to call upon the borrower/mortgagor to pay the obligation or else have his right of equity to redeem the mortgage property foreclosed.

By statute, as noted in the main opinion, New Jersey required that when an obligation was evidenced by a bond and secured by mortgage, the lender/mortgagee could not sue on the bond without first foreclosing by sale, and could not join in the same action a suit for foreclosure and on the bond for "deficiency".

This statute, and corresponding court rules in the State courts, prevail today. Yet, as noted in the main opinion, they do not apply when the obligation is evidenced by a note, rather than by a bond.

Nothing has been shown to alter the original conclusion that in an action by the United States, on an obligation secured by mortgage, brought in the federal courts as an action to which the United States is a party, the local procedural rules that would otherwise apply when the obligation is evidenced by a bond, rather than a note, do not apply.

That the local rule is procedural only is obvious. In an action for foreclosure by sale, one of the issues necessarily is whether anything is due on the bond. Another is a determination of the amount that is due. Both of these must be established before there can be an order directing a sale, if only because both the mortgagor and mortgagee must know what amount the sale needs to produce in order to satisfy the obligation.

But these are precisely the same issues that must be adjudicated in an ordinary suit for a money judgment on the obligation. In the foreclosure by sale proceeding, the

action is primarily against the mortgaged property, an action *in rem* if there be no personal jurisdiction over the debtor. In the suit on the obligation, the action is primarily against the debtor, for which jurisdiction *in personam* is required.

In this case, as in most foreclosure cases, there is both jurisdiction *in rem* over the property and jurisdiction *in personam* over the debtor.

There thus appears to be no reason why this action could not have been merely an action *in personam* against the debtor for a money judgment in the amount of the obligation, just as would be the case in the New Jersey courts if the obligation had been evidenced by a note rather than by a bond.

Beyond that, while the New Jersey statute and court rule forbid joinder in the same action of a suit for foreclosure and a suit on the bond, no corresponding restriction on joinder of actions appears in any Act of Congress or in the Federal Rules of Civil Procedure.

■ From these conclusions, only two questions appear. One is the applicability of the "fair value" doctrine, first developed in the *Lowenstein* case (*Federal Title & Mortg. Guaranty Co. v. Lowenstein*, 113 N.J.Eq. 200, 166 A. 538) and then embodied in part in the New Jersey statute. The answer to that question is that while a federal court might adopt a federal "fair value" doctrine along the lines of *Lowenstein*, such a rule would have no application in a case like this where there has been no sale at all, and where record title remains as it was before the suit.

The second question is whether any offset against the obligation should be allowed on the claim that had the United States foreclosed at an earlier date, the mortgaged property would have retained enough value to generate bids at the sale. The obvious answer is that no offset can be allowed. Although entitled to do so, the United States did not take possession before foreclosure as a mortgagee in possession. Had it done so, then if local law applied it could be charged with waste. Not having done

so, it cannot be so charged under any principle cited to the court.

In fact, since the mortgagors had sold the property to a third person, taking back a mortgage of their own, then when he evidently "milked" the property they were in a position to both retake possession as mortgagees in possession and to foreclose their own mortgage, thus preserving the security and protecting against their own obligation. They chose to do neither. No equitable claim can be made, first because their own conduct was precisely the same as the conduct charged against the United States, and second because nothing is shown to indicate any financial inability to pay the obligation to the United States out of other assets.

The history of the case discloses that when the order for sale was returned unexecuted for lack of any bid, the late Judge Shaw saw the case as an ordinary suit on a bond. Evidently, because defendants advanced equitable defenses, Judge Shaw denied the then motion for summary judgment and ordered the case placed on the non-jury calendar for trial. After his death and a transfer to Judge Garth, the case evidently was not reached, and after Judge Garth left the district court and the case was again reassigned, the case was tried to judgment.

Thus, the answer to the threshold question is that there may be a money judgment on a note or bond to the United States, secured by mortgage, without foreclosure of the mortgage at all; and when there has been an attempted foreclosure which is frustrated by the absence of any bids, the money judgment may be entered but the foreclosure aspect of the suit should be dismissed.

Such a course will terminate the action with the money judgment, and will leave the record title in the same state it was before foreclosure, subject to the lien of the mortgage.

The existing money judgment will accordingly remain in full force and effect. The United States is to submit a form of modification of judgment to dismiss the foreclosure aspect.