BRICKYARD ASSOCIATES

v.

AUBURN VENTURE PARTNERS.

BRICKYARD ASSOCIATES

v.

Frederick L. LEIGHTON[1].

Supreme Judicial Court of Maine.

Argued Jan. 13, 1993.
Decided May 6, 1993.

**1.** These two appeals were consolidated for the purposes of briefing and argument.

John B. Cole (orally), Skelton, Taintor & Abbott, Auburn, for plaintiff.

Ralph A. Dyer (orally), Portland, for defendant.

Before ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

CLIFFORD, Justice.

In a real estate foreclosure action brought by the plaintiff, Brickyard Associ-ates (Brickyard) (And. Cty. CV–88–364), defendant Auburn Venture Partners (AVP) appeals from the approval by the Superior Court (Androscoggin County, *Delahanty, C.J.*) of a report of public sale filed pursuant to 14 M.R.S.A. § 6324 (Supp.1992) following the foreclosure by Brickyard of a second mortgage granted to it by AVP. AVP contends that the report of public sale filed by Brickyard should have been rejected because it was not filed on time and because AVP was not properly credited in the deficiency calculation with the fair market value of the property foreclosed.

In a companion case (And. Cty. CV–91–304), defendant Frederick Leighton appeals from the denial in Superior Court (Androscoggin County, *Delahanty, C.J.*) of his motions to vacate an attachment and an attachment by trustee process in a suit brought by Brickyard against Leighton to recover the balance due on the underlying note. Leighton claims that the attachment was erroneously granted because the complaint was prematurely filed prior to the establishment of the amount of the deficiency, and, in the alternative, that the suit is barred by the foreclosure action. In addition, Leighton contends that the attachment by trustee process is defective because it was addressed to a trade name rather than specifically to a corporate trustee. Finding no error or abuse of discretion in either decision, we affirm the judgment in CV–88–364, the foreclosure action, and the order of attachment in CV–91–304, the action on the note.

In December of 1986, AVP purchased real estate in Auburn from Brickyard for $385,000. AVP granted a first mortgage on the property to Norstar Bank (now Fleet Bank) to secure a debt in the amount of $150,000, and a second mortgage to Brickyard to secure a debt in the amount of $235,000, the balance of the purchase price. Leighton and Richard Jacobs, the sole partners of AVP, also signed as comakers the note given by AVP to evidence its debt to Brickyard. In December 1987, AVP defaulted under the terms of the second mortgage given to Brickyard, and in September 1988, Brickyard commenced fore-

closure proceedings against AVP pursuant to 14 M.R.S.A. §§ 6321–6325 (Supp.1992). A judgment of foreclosure was entered on March 27, 1990 and a sale of the property was ordered. In November 1990, Brickyard was the only bidder at a public foreclosure sale and AVP's interest in the property was sold to Brickyard for $1.[2] At the time of sale, the real estate had an appraised value (excluding encumbrances) of $96,000, well below the aggregate amount of the secured debt. Brickyard did not file its report of sale and request for execution in the foreclosure action until April 8, 1992. The court approved the report and request on June 10, 1992, and AVP's appeal of the judgment followed.

Brickyard instituted a separate two-count action against Leighton as a comaker of the note, and as a general partner of AVP responsible for its debts. Following the entry of an order of attachment and trustee process, *see* M.R.Civ.P. 4A and 4B, Leighton filed a motion to dismiss the complaint based on Brickyard's failure to file a report of sale as required by 14 M.R.S.A. § 6324, and motions to vacate the attachment and trustee process. The court denied Leighton's motion to dismiss the action and denied relief from the attachment and trustee process. Leighton filed this appeal contesting the denial of his motions to vacate.

## I.

*Brickyard v. Auburn Venture Partners*

■ AVP contends that Brickyard's delay in filing the report of public sale bars the court's approval of the report. In support of its contention, AVP borrows the two-year time limit specified in 14 M.R.S.A. § 6203–D (1980), governing the procedure for foreclosing corporate mortgages, and invokes the doctrines of laches, waiver, and estoppel for Brickyard's alleged failure to act with expediency and in good faith. The report of sale, mandated by 14 M.R.S.A. § 6324,[3] is intended to reveal the sale price and disposition of sale proceeds to insure the adequacy of the price at sale, *see Kennebec Sav. Bank v. Chandler*, 447 A.2d 824, 826 (Me.1982), and to protect against a self-dealing mortgagee. *Peoples Sav. Bank v. Spencer*, 482 A.2d 832, 834 (Me. 1984). There is no express statutory time limit for the filing of the report of sale following a foreclosure proceeding by civil action. The court correctly determined that section 6324 requires the report to be filed within a reasonable time.

■ Although a delayed report of sale may in some cases have an adverse impact on a mortgagor, AVP fails to identify any harm to it from Brickyard's delay or any evidence that the report failed to fulfill its statutory purpose. AVP's claim that the delayed report of sale left it in limbo concerning its first mortgage obligation to Fleet Bank is unavailing because that obligation is unaffected by Brickyard's foreclosure.[4] Unlike a delay in the distribution of proceeds from a foreclosure surplus that would unfairly detain funds due a mortgagor, in this case there is a deficiency that is

---

2. Before the closing took place, Jacobs filed for bankruptcy protection prompting Brickyard to seek relief from the automatic stay provisions of the bankruptcy code in order to proceed with the transfer of title. The property interest was eventually transferred by quitclaim deed from Brickyard as mortgagee to Brickyard as purchaser.

3. 14 M.R.S.A. § 6324 provides in relevant part:
The mortgagee shall file a report of the sale and the disbursement of the proceeds therefrom with the court.... This report need not be accepted or approved by the court, provided that the mortgagor or any other party in interest may contest the accounting by motion filed within 30 days of receipt of the report, but any such challenge shall be for money

only and shall not affect the title to the real estate purchased by the highest bidder at the public sale.

4. AVP argues, erroneously, that on purchase of the property, Brickyard has an obligation to assume responsibility for the debt secured by the Fleet mortgage and that the delay in filing the report of sale has forestalled this event. Brickyard, however, has merely acquired AVP's equity of redemption; title to the property remains with Fleet and AVP remains contractually obligated on the note to Fleet. *See Smith v. Varney*, 309 A.2d 229, 232 (Me.1973) (Maine is a mortgage title theory state); *see also* D. Cummings, *Grinding Gears: Meshing Maine Mortgage Foreclosure Law and the Bankruptcy Code*, 44 Me.L.Rev. 63 n. 2 (1992).

due to the mortgagee, and any delay in establishing the deficiency is a postponement of payment to the mortgagee. We discern no clear error in the court's implicit determination that the report was filed within a reasonable time. *See Chandler*, 447 A.2d at 827.

AVP next contends that the calculation of the deficiency resulting from the foreclosure sale is incorrect because it does not credit AVP with the property's appraised fair market value, that AVP contends is $96,000.[5] AVP argues that because Brickyard is a mortgagee-purchaser and now has possession of the property, the property's fair market value should be reflected in the deficiency calculation. In so contending, AVP relies on the provisions of 14 M.R.S.A. § 6324 [6] providing that a deficiency judgment against a mortgagor be "limited to the difference between the fair market value of the premises at the time of the public sale, as established by an independent appraisal, and the sum due the mortgagee as established by the court with interest plus the expenses incurred in making the sale."

In construing section 6324, our focus should be to ascertain and effect the purpose of the statute, and to avoid illogical results. *State v. Niles*, 585 A.2d 181, 182 (Me.1990). The purpose of section 6324 is to ensure that a mortgagor faced with a deficiency judgment be credited with the fair market value of the premises if the real estate is sold to the mortgagee at a foreclosure sale. The statute's application when a first mortgage is foreclosed and the property is sold to the first mortgagee at a public sale is clear. Contrary to AVP's contention, however, section 6324 cannot be read to mandate that the amount of a deficiency judgment against a second mortgagor be offset by the value of the real estate at the time of sale without regard to the amount of the outstanding first mortgage.

Foreclosure of a second or junior mortgage is governed by 14 M.R.S.A. § 6321.[7] That section explicitly provides that the second mortgagee's interest foreclosed on is limited to the mortgagor's equity of redemption, and that the first mortgagee's interest (legal title to the real estate) is not affected by the foreclosure of the second mortgage. The first mortgagee is not even joined as a party. *Id.* Thus, in the case of a second mortgage foreclosure, the interest foreclosed on and the interest subsequently sold at a public sale is not the fee interest in the land (the value of which in this case, before encumbrances, is $96,000), but the mortgagor's equity of redemption, which here is merely AVP's right to redeem the property from the first mortgagee, Fleet Bank. The underlying mortgage given to Fleet remains in place until such time as AVP defaults or the mortgage is paid. *See Shaikh v. Burwell*, 105 N.C.App. 291, 412 S.E.2d 924, 926 (1992).

Accordingly, in the case of a second or junior lien foreclosed under section 6321, the amount owed on a first mortgage or senior lien has to be taken into account in determining the value of the premises pursuant to section 6324. *See Kaplan v. Ruffin*, 193 S.E.2d 689, 692 (Va.1973) ("[A]

---

5. Brickyard's deficiency calculation appears as follows:

| | |
|---|---|
| Purchase price | $ (1.00 ) |
| Foreclosure Judgment | 294,577.32 |
| Accrued interest | 14,099.22 |
| Sale expenses | 11,373.00 |
| Deficiency | $ 320,048.54 |

6. 14 M.R.S.A. § 6324 provides in pertinent part:

In the event the mortgagee has been the purchaser at the public sale, any deficiency shall be limited to the difference between the fair market value of the premises at the time of the public sale, as established by an independent appraisal, and the sum due the mortgag-ee as established by the court with interest plus the expenses incurred in making the sale.

7. 14 M.R.S.A. § 6321 provides in part:

After breach of condition of any mortgage other than one of the first priority, the mortgagee or any person claiming under him may proceed for the purpose of foreclosure by a civil action against all parties in interest, except for parties in interest having a superior priority to the foreclosing mortgagee.... Parties in interest having a superior priority shall not be joined nor will their interests be affected by the proceedings, *but the resulting sale under section 6323 shall be of the defendant or mortgagor's equity of redemption only.* (Emphasis added.)

purchaser taking [property] subject to prior liens pays what he thinks the property is worth over and above those liens.... [T]he bid at a sale pursuant to a second [mortgage] should be a net bid, excluding prior lien indebtedness.") (citing 1 *Glenn on Mortgages* § 109, at 659 (1943)).

Thus Brickyard, as a second mortgagee, foreclosed and subsequently sold to itself only a limited interest in the property, which in this case was AVP's right to redeem the property from Fleet. In view of the outstanding mortgage to Fleet securing a note far in excess of the property's appraised value, the property interest purchased by Brickyard (the equity of redemption) had no market value. The fair market value of the premises that Brickyard purchased, therefore, was not $96,000, as contended by AVP, but was effectively zero. The appraisal submitted with the report of sale reflects this fact.[8] Section 6324 does not require that AVP be credited on the deficiency judgment with value not received by Brickyard at the public sale. The deficiency calculation was accurate and the court did not err in its acceptance of the report of sale.

## II.

### Brickyard v. Leighton

By separate appeal, Leighton contests the trial court's denial of his motions to vacate the attachment and trustee process of his assets.[9] We review a denial of a motion to dissolve an attachment for clear error or abuse of discretion. *Beesley v. Landmark Realty, Inc.*, 464 A.2d 936, 937 (Me.1983). At the time the attachment was sought and granted, a plaintiff was entitled to an attachment against a defendant's property if the court found a "reasonable likelihood" that the plaintiff would recover from the defendant a judgment equal to or greater than the amount of the attachment, over and above the aggregate of any liability insurance, bond, or other security. M.R.Civ.P. 4A(c) (amended effective February 15, 1992).[10] The reasonable likelihood test reflects a low threshold that can be met by a showing of a reasonable possibility of recovery of the amount sought in the attachment. *Casco Northern Bank, N.A. v. New England Sales, Inc.*, 573 A.2d 795, 797 & n. 4 (Me.1990). Under the reasonable likelihood standard, an attachment motion will be denied or a previously issued attachment order will be dissolved only when a plaintiff has virtually no chance of recovery. *Herrick v. Theberge*, 474 A.2d 870, 874 (Me.1984).

Leighton challenges the prejudgment attachment on his property because he contends that the action against him, filed prior to the court's acceptance of the report of sale establishing the amount of the deficiency, was premature and legally insufficient absent a final determination of the amount owed. In addition, Leighton asserts that Brickyard's action against him as a comaker of the note is barred by its election of a foreclosure remedy.

While the filing of a report of sale may entitle a purchasing mortgagee to the entry of a deficiency judgment unless the mortgagor objects, *see Spencer*, 482 A.2d at 834, there is no requirement that a report of sale be filed or accepted, or that the amount due be precisely known prior to initiating a suit against a comaker or a

---

8. A supplemental appraisal makes clear that the fair market value of $96,000 indicated elsewhere in the appraisal report is based on the assumption that the property is free and clear of all encumbrances.

9. Leighton does not appeal from the denial of his motion to dismiss AVP's complaint, an interlocutory ruling. *See Garrison v. Finks*, 469 A.2d 440, 440 (Me.1983)

10. Effective February 15, 1992, the rule governing attachments was amended to provide that an attachment or trustee process may be ordered only if the court finds that it is "more likely than not that the plaintiff will recover judgment in an amount equal to or greater than the aggregate sum of the attachment." M.R.Civ.P. 4A(c); *see also* M.R.Civ.P. 4A(g), 4B(c), (i). In this case, the attachment order was dated August 15, 1991. On a motion to vacate an attachment, the party having previously secured the attachment has the burden of justifying any finding in the previously issued order. *Casco Northern Bank, N.A. v. New England Sales, Inc.*, 573 A.2d 795, 797 (Me.1990); M.R.Civ.P. 4A(h). Therefore the reasonable likelihood standard applies.

responsible partner. *See Resolution Trust Corp. v. Crow,* 763 F.Supp. 887, 892 (N.D.Tex.1991). Thus, the court did not err nor did it abuse its discretion in approving the attachment prior to an official determination of the deficiency because it could find from the affidavit evidence presented that there was a reasonable likelihood that Brickyard would recover a judgment in the amount of $320,000.

 Nor does Brickyard's foreclosure action against AVP preclude its suit against Leighton as comaker of the note. The doctrine of election of remedies, relied on by Leighton, precludes the utilization of two inconsistent and repugnant positions to seek redress, *State Dev. Office v. State Employees Appeals Bd.,* 363 A.2d 688, 692 (Me.1976), but is not implicated until a chosen remedy is pursued to a viable judgment. *Murray v. City of Augusta,* 394 A.2d 1171, 1173 (Me.1978). Brickyard has foreclosed on property that has no value to it in its attempt to collect on a debt jointly owed by AVP and Leighton. Under the terms of the note and mortgage, Brickyard may consistently seek repayment from AVP, Leighton, or a combination of the two until the claim is satisfied. *See United States v. Caprice,* 427 F.Supp. 1035, 1038–39 (D.N.J.1976). Accordingly, there was no error in the court's attachment order.

In addition, Leighton argues that the trial court abused its discretion when it denied his motion to dismiss the trustee action for defective process. Brickyard's trustee process was addressed to "Fidelity Investments" while the assets of Leighton's that it sought to trustee are held by "Fidelity Service Company" and "Fidelity Trust Company." Fidelity Investments is not a corporate entity. Fidelity Trust Company and Fidelity Service Company are independent but affiliated corporations and use Fidelity Investments as a common trade name.

 Trustee process must be "directed to the trustee." M.R.Civ.P. 4B(b). When process affords a party notice of the action, however, notice to the party under its trade name may be sufficient. *See*

*Thune v. Hokah Cheese Co.,* 260 Iowa 347, 149 N.W.2d 176, 179 (1967) ("As long as the real party receives proper notice of the action, we are unable to see any prejudice in permitting him to be sued in a trade or fictitious name alone."); *Rollins v. Junior Miller Roofing Co.,* 55 N.C.App. 158, 284 S.E.2d 697, 701 (1981).

Here, trustees Fidelity Trust Company and Fidelity Service Company received the notice of process addressed to Fidelity Investments and answered the summons in a timely manner. Neither of the trustees alleges any defect in the process, nor does Leighton point to any harm flowing from the technical defect in notification. Absent any evidence of prejudice, the process addressed to the trustee's trade name was sufficient. *See Security Pac. Nat'l Trust Co. v. Reid,* 615 A.2d 241, 243 (Me.1992). Accordingly, the trial court's denial of Leighton's motion to vacate the trustee process for defective notice constituted neither error nor an abuse of discretion. *Hamm v. Hamm,* 584 A.2d 59, 62 (Me. 1990).

The entry is:
AS TO CV–88–364:
Judgment affirmed.
AS TO CV–91–304:
Order of attachment affirmed.

All concurring.