STATE OF MAINE                                    SUPERIOR COURT
PENOBSCOT, ss                                     CIVL ACTION
                                                  Docket No. RE-11-19
                                                  2AMM - PEN-12/30 2012

BANGOR SAVINGS BANK,
                        Plaintiff

v.                                                **ORDER**

FRANCIS P. GABIANELLI A/K/A
FRANK P. GABBIANELLI AND
JOANNE M. GABBIANELLI,
                        Defendants

This matter came before the Court for hearing on August 16, 2012. Plaintiff

appeared with its attorney, Michael Haenn, Esq. Defendants appeared with their

attorneys, Gross, Minsky and Mogul, P.A. The property at issue in this *foreclosure case*

is located in Dixmont, Penobscot County, Maine.


**Factual Background and Findings**

On March 11, 2003, Francis P. Gabbianelli and Joanne M. Gabbianelli (the only

Defendants in this action) and Gabbianelli Enterprises, Inc. (GEI) executed and delivered

a commercial promissory note in the original principal amount of $330,000.00 (330K

note). Mr. and Mrs. Gabbianelli and GEI executed and delivered a mortgage deed to the

Plaintiff with respect to property located at 3 Veterans Highway in Brooks, Maine (the

Brooks Property) in favor of Bangor Savings Bank (the Plaintiff) to secure the 330K

Note. Mr. and Mrs. Gabbianelli also executed and delivered a mortgage deed to the

Plaintiff with respect to their personal residence located at 268 Hog Hill Rd. in Dixmont,

Maine (the Dixmont property) to secure the same 330K Note. In 2006, Mr. and Mrs.

Gabbianelli and GEI also executed and delivered a 20K Note to the Plaintiff. This Note

was secured only by the Brooks property. The Gabbianellis and GEI defaulted on the

1

330K Note by failing to make required payments and as a result breached conditions in the mortgages on both the Brooks and Dixmont Properties.[1] The Plaintiff brought separate foreclosure actions on the mortgages in Waldo and Penobscot Counties.[2] On June 7, 2011, the Belfast District Court in Waldo County entered two Orders:[3]

1) with respect to Counts I and II of the Complaint, the two counts of the Complaint that involved allegations against Mr. and Mrs. Gabbianelli, the Court issued an "Order and Judgment of Foreclosure." This Order described the action as a "civil action to foreclose mortgage liens." This "Order and Judgment of Foreclosure" in pertinent part provided as follows: A) "… the Court hereby ORDERS and ADJUDGES a foreclosure of both the 330K Mortgage and the 20K Mortgage…," and B) "If the proceeds of the public sale are insufficient to satisfy the amount adjudged to be due and owing to the Plaintiff as provided hereinabove, the Plaintiff shall have the remedies for a deficiency …"; and

2) with respect to Counts III and IV of the Complaint, the two counts of the Complaint that involved allegations against GEI, the Belfast Court issued an "Order and Judgment." This Order describes the action as a "civil action to enforce the contractual obligations of … [GEI]." The "Order and Judgment provided in pertinent part as follows: A) "… it is hereby ORDERD, that judgment be and is hereby entered on Count III

---

[1] The Gabbianellis and GEI also defaulted on the 20K note, and such default was the subject of Counts II and IV of the Belfast District Court action.

[2] The decision to pursue these foreclosure actions in separate counties was not a discretionary litigation tactic, but instead a requirement under 14 M.R.S. § 6321.

[3] The Court takes judicial notice of the Belfast District Court case, RE-11-06.

2

of the Complaint [relating to the 330K Note] in favor of the Plaintiff and against [GEI]...; and B) "It is further ORDERED, that judgment be and is hereby entered on Count IV of the Complaint [relating to the 20K Note] in favor of the Plaintiff and against [GEI]...."

Plaintiff asserts that it did not request or receive a personal judgment against the Gabbianellis in the Waldo County action, nor is it seeking a personal judgment against them in this action. Defendants agree there is no personal judgment against them in the Waldo County action, but argue that there is a judgment with respect to the 330K Note in the Waldo County action, albeit the judgment on the Note is against GEI.

## Issues

Defendants have raised two issues[4] for the Court's consideration: 1) Do the Belfast District Court's Judgments limit the amount Plaintiff may "recover" in the present foreclosure; and 2) Is the Plaintiff improperly claiming in this Penobscot County action foreclosure expenses and attorney fees unrelated to the Dixmont property and/or already awarded in connection with the Belfast District Court Order and Judgment of Foreclosure?

## Analysis

The Court has considered the arguments and evidence presented by the parties at trial and in their written submissions. This case is in a unique posture. Plaintiff seeks the equitable remedy of foreclosure[5], yet there are two mortgages securing one 330K Note

---

[4] To the extent Defendants raised the issue of lack of proper notice by the Bank, the Court is satisfied that the Bank appropriately satisfied the notice requirements.

[5] *Kennebec Federal Savings and Loan Assoc. v. Kueter*, 1997 ME 123, 695 A. 2d 1201 (matters relating to a mortgage foreclosure action are equitable in nature).

3

and one of the mortgaged properties in a different county was sold a year ago. Open questions remain about the amount currently due on the Note and the amount of foreclosure expenses and attorney fees that should be considered in connection with the foreclosure of the Dixmont property. Thus, the Court will not issue a Foreclosure Judgment at this time.

### A. Defendants' Merger Claim

The Defendants claim that since the Plaintiff received a judgment in the Belfast case on the 330K Note (albeit against GEI), the underlying obligation has merged into the final judgment. Defendants rely on the following for their merger argument:

> The general rule of merger is that when a valid and final personal judgment is rendered in favor of the plaintiff, the original debt or cause of action, or underlying obligation upon which an adjudication is predicated, is said to be merged into the final judgment, and the plaintiff cannot maintain a subsequent action on any part of the original claim, because the doctrine of merger operates to extinguish a cause of action on which a judgment is based and bars a subsequent action for the same cause. A new cause of action on a judgment is substituted for the original claim.
>
> The merger rule of claim preclusion does not require that there be an identity of all parties in both lawsuits. Rather, it requires that the plaintiff whose claim may be merged and the defendant whose defense may be barred in the first lawsuit also be the parties affected by the same claim in the second suit. 46 *Am. Jur. 2d Judgments* § 451 (2012).

Additionally, as the Bankruptcy Court for the District of Maine stated in *In re Bache-Wiig v. Fournier*, 299 B.R. 245, 249-250 (Bank. D. Me. 2003):

> The general rule is that a mortgagee who has obtained a judgment on the mortgage note does not forgo his rights under the mortgage until the debt is satisfied. The cases are uniform in holding that until the mortgage debt is actually satisfied, the recovery of a judgment on the obligation secured by a mortgage, without the foreclosure of the mortgage, although merging the debt in the judgment, has no effect upon the mortgage or its lien, does not merge it, and does not preclude its foreclosure in a subsequent suit instituted for that purpose... the conclusion often reached in such cases being that the debt is not destroyed by the merger and that the mortgage secures the debt in its new form as merged in the judgment. (quoting in part from 55 Am. Jur. 2d Mortgages § 524.)

4

Under the terms of the note and mortgage, the Plaintiff may seek foreclosure on the Belfast and the Dixmont properties until the note is satisfied. *See Brickyard Assoc. v. Auburn Venture Partners, et. al.,* 1993 ME 223, 626 A. 2d 930, holding that the doctrine of election of remedies "precludes the utilization of two inconsistent and repugnant positions to seek redress … but is not implicated until a chosen remedy is pursued to a viable judgment"[6].

Throughout their merger argument, Defendants discuss 14 M.R.S. § 6324 and argue that the bank has failed to "give proper credit to the Defendants for the Brooks property." However, issues concerning the fair market value of the Brooks Property and the amount of any resulting deficiency must be addressed with the Belfast District Court through 14 M.R.S. § 6324. It would not be proper for this Court to make such determinations, risking potential inconsistencies between the findings of this Court and findings by the Belfast District Court.

In connection with the action on the 330K Note (against GEI) and on the foreclosure of the Brooks mortgage granted by Mr. and Mrs. Gabbianelli securing the same 330K note, the Belfast District Court determined that "[A]s of April 1, 2011 the amount due and owing to the Plaintiff pursuant to the terms of the 330K Note (exclusive of attorneys' fees and costs) … [was] $235,553.18.[7] This Court adopts the Belfast District Court's finding that the amount due and owing on the Note as of April 11, 2011 was $235,553.18, exclusive of attorneys' fees and costs. However, at this point it is inappropriate for this Court to determine the amount currently due and owing under the

---

[6] In this context, a viable judgment means until the debt has been satisfied. *Saucier v. State Tax Assessor,* 2000 ME 8.

[7] The Belfast Court continued and found against GEI that "as a matter of contract" the reasonable attorneys fees in connection with the action to enforce the 330K note and the 20K note were $4,859.49 and also found that the reasonable attorney fees in connection with the foreclosure of the mortgage liens were $4,859.49.

5

Note as the Bank has sold the Brooks store and the Belfast Court has not yet had the opportunity to determine the appropriate credit under the Note. It is theoretically possible that the Belfast Court will determine the Note has been satisfied. While the attorneys fees and foreclosure expenses incurred in foreclosing on the Dixmont property (as opposed to the Brooks property) may affect the amount the Gabbianellis would have to pay to redeem the Dixmont property or the potential disbursement of sale proceeds, see Mortgage Deed and 14 M.R.S. §§ 6324 and 6322, since the Bank has already sold the Brooks property, this Court will not be in a position to determine the current amount due under the Note until the Belfast action has been concluded.

## B. *Defendants' Claims of Double Recovery*

### 1) Foreclosure Expenses

The Defendants claim that Plaintiff is seeking recovery in this Penobscot County action for expenses incurred in connection with the Brooks property and/or expenses already awarded in the Belfast foreclosure action. In the Penobscot County action, Plaintiff is only entitled to the amount due under the Note after determination by the Belfast Court of the amount to be credited to the Note and expenses incurred in connection with the mortgaged Dixmont property, but only to the extent that such expenses are not already part of the Belfast Court's calculation. *See* 14 M.R.S. § 6322.

### 2) Attorney's Fees

The Defendants also claim that Plaintiff is attempting to recover in the Penobscot County action attorney's fees incurred in connection with the Brooks foreclosure and/or fees already awarded by the Belfast District Court. In the Penobscot County action, Plaintiff is only entitled to the amount due under the Note after determination by the Belfast District Court of the amount to be credited to the Note and reasonable attorney's

6

fees associated with a breach of condition in the Dixmont mortgage, but only to the extent that such fees are not already part of the Belfast District Court's calculation. *See* 14 M.R.S. § 6322. Defendants have demonstrated that Plaintiff is seeking to recover in this Penobscot County action on invoice numbers identical to those included in the fee affidavit filed in the Belfast District Court in connection with the Brooks Property.

The "Report of Sale" for the October, 2011 sale of the Brooks property having been withdrawn over two months ago is troubling as it relates to the Penobscot County equitable action. Under the present circumstances, the Defendants have lost possession and ownership of the Brooks Property and its contents, but do not yet have "credit" for their equity in the property. While Plaintiff may be entitled to foreclose on the Dixmont Property, the Defendants are also entitled to an accurate determination of the amount owed, costs, and attorney's fees. 14 M.R.S. § 6322. It appears that Defendants might wish to/be able to satisfy their debt to Bangor Savings Bank before foreclosure of the Dixmont property or may wish to/ be able to redeem the Dixmont property after a Foreclosure Judgment once they know the amount that remains owing on the Note after the Belfast Court matter has been concluded.[8]

Therefore, it is **ORDERED** that no later than 21 days after resolution of the Belfast matter (after Plaintiff files its Report of Sale and the Court resolves the issues, if any, with the Report of Sale), Plaintiff shall file an Affidavit with respect to attorneys fees and foreclosure expenses, and shall specify the attorneys fees and foreclosure

---

[8] The Belfast District Court docket, RE-11-06, reflects that a Report of Sale was filed on November 28, 2011, and an objection was filed on December 21, 2011. The Report of Sale recited that the Brooks property was sold by the Plaintiff on October 18, 2011 and that the Plaintiff was the high bidder at the sale. Without the Court having acted on the Report, the Report of Sale was withdrawn by the Plaintiff on August 15, 2012 and Plaintiff represented to the Court that an Amended Report of Sale would be filed "[i]n short order". Two months have passed and no Amended Report of Sale has been filed. Given potential prejudice to the Defendants, the "reasonable" time under the circumstances for Plaintiff to file the Report of Sale in the Belfast action is ticking. *See Brickyard.*

expenses related to the Dixmont property foreclosure action and the Brooks property foreclosure action. The Affidavit shall also include the following exhibits:

1.  Exhibit A – the attorneys fees by date with a description of the work performed and the time spent on the Belfast foreclosure action (including through the date of any hearing on the Report of Sale);

2.  Exhibit B - the attorneys fees by date with a description of the work performed and the time spent on the Penobscot County foreclosure action;

3.  Exhibit C – the total attorney fees by date with the description of the work performed and the time spent on the Belfast and Penobscot County matters together.

4.  Exhibit D – the foreclosure expenses related to the Belfast foreclosure action; and

5.  Exhibit E – the foreclosure expenses related to the Penobscot County foreclosure action.

If any time was _billed_ to both the Belfast and Penobscot County matters, then such time shall be highlighted in yellow on both Exhibits A and B, and obviously will only constitute one entry on Exhibit C.

After Plaintiff files its Affidavit as set forth above, Defendants shall have 21 days to respond.

Counsel shall report to this Court the status of the Belfast case every three (3) months, beginning January 5, 2013.

Assuming there is an amount due and owing on the 330K Note after the Belfast case is resolved, a Judgment of Foreclosure will issue against the Dixmont property, and this Court retains jurisdiction to take further action in this matter.

The Clerk is directed to send a copy of this Order to the Belfast District Court.

The Clerk is further directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated: 10/30/12

Ann M. Murray, Justice
Maine Superior Court

9